IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 18, 2018 Session

## LINDA OWENS v. HAMILTON COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 16-0689  Pamela A Fleenor, Chancellor**

———————————————————

**No. E2017-02395-COA-R3-CV**

———————————————————

Taxpayer brought action against the county and the purchaser at the delinquent tax sale alleging the sale of her property was void due to the lack of notice of the delinquent tax sale proceeding.  The trial court denied the motion for summary judgment filed by the taxpayer and dismissed taxpayer's complaint in its entirety.  Taxpayer appeals.  Because the county never effectuated proper service on taxpayer, we reverse the trial court's decision and remand with instructions that the trial court void the sale of taxpayer's property and declare taxpayer the fee simple owner.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

John P. Konvalinka, Mark W. Litchford, Hollie A. Floberg, Chattanooga, Tennessee, for the appellant, Linda Owens.

C. Ballard Scearce, Jr., Chattanooga, Tennessee, for the appellee, Kenneth Stiner, Sr.

Rheubin Taylor, Chattanooga, Tennessee, for the appellee, Hamilton County, Tennessee.[1]

### OPINION

### I. Background

In February 2012, Hamilton County, Tennessee ("the County"), mailed the 2011 property tax bill to Ms. Linda Owens ("Appellant").  The mailing address on the tax bill was "9410 Dexter LN," Ms. Owens's residential address.  Ms. Owens failed to pay her

---

[1] Hamilton County, Tennessee did not file a brief in this appeal but did appear at oral argument.

tax bill, and in March 2013, the County filed a delinquent tax lawsuit ("Delinquent Tax Suit") against her in the Chancery Court for Hamilton County ("trial court"). In April 2013, the County mailed the summons ("first summons") regarding the lawsuit, via certified mail, to "09410 Dexter LN." It was returned to the County and showed: "Return to Sender, Not Deliverable as Addressed, Unable to Forward." In November 2014, the County mailed a second summons ("second summons"), via certified mail, to Ms. Owens at "9412 Dexter LN." The second summons was returned to the County and showed: "Return to Sender, No Such Number." In January 2015, Sheriff's Deputy Gregg Bowman attempted to personally serve Ms. Owens with the third summons at "9412 Dexter LN." Deputy Bowman's return stated: "not served because the defendant(s) could not be located." Deputy Bowman added a handwritten notation on the return, stating: "Vacant Lot." After the foregoing attempts at service, the County moved to serve Ms. Owens via publication. By order of January 29, 2015, the trial court allowed service on Ms. Owens by publication. The address for Ms. Owens listed in the publication was "9412 Dexter LN." Ms. Owens did not see the publication and did not answer the lawsuit.

On March 25, 2015, the County filed a Motion for Default Judgment against Ms. Owens. Despite being made aware that "9412 Dexter LN" was a vacant lot, the County mailed the motion to Ms. Owens at that address. On April 13, 2015, the motion was granted. The County also mailed a copy of the Order of Default to Ms. Owens at "9412 Dexter LN," which order was returned to the County and showed: "Return to Sender, No Such Number, Unable to Forward." On May 22, 2015, the trial court entered an Order Confirming Master's Reports and Order to Sell Ms. Owens's property. For purposes of the sale, the County listed the address for Ms. Owens's property as "9412 Dexter LN." The County mailed the Order Confirming Master's Reports and Order to Sell to Ms. Owens at "9412 Dexter LN," which mailing was returned to the County and showed: "Return to Sender, No Such Number, Unable to Forward."

On June 4, 2015, the County sold Ms. Owens's property to Mr. Kenneth Stiner, Sr. ("Appellee") for $42,000.00. The Order Confirming Sale was filed on June 24, 2015, and a copy of same was mailed to Ms. Owens at "9412 Dexter LN." The copy of the order was returned to the County and showed: "Return to Sender, Not Deliverable as Addressed, Unable to Forward." Ms. Owens was not aware that Mr. Stiner purchased her property until he arrived at her home in July 2016 to take possession.

On October 11, 2016, Ms. Owens filed suit ("Equity Suit") in the trial court against the County and Mr. Stiner. Ms. Owens alleged that the County violated her Due Process rights when it failed to provide her notice of the tax sale. She requested that the trial court set aside the sale of her property and declare her the fee simple owner. In November 2016, both the County and Mr. Stiner filed separate answers.

On February 10, 2017, Ms. Owens filed a Motion for Judgment on the Pleadings

requesting that the trial court declare the delinquent tax sale void and restore Ms. Owens's ownership. On February 24, 2017, Ms. Owens filed, *inter alia*, a Tennessee Rule of Civil Procedure 60.02 Motion for Relief from Judgment and Order, and a Motion to Consolidate the Delinquent Tax Suit and the Equity Suit. By order of March 20, 2017, the trial court consolidated the two suits. By separate order of March 20, 2017, the trial court merged Ms. Owens's Rule 60.02 Motion with her Motion for Judgment on the Pleadings. By the same order, the trial court converted Ms. Owens's Motion for Judgment on the Pleadings into a motion for summary judgment. On July 6, 2017, Ms. Owens filed: (1) her supplemental motion for summary judgment with attached exhibits; (2) her Statement of Undisputed Facts; and (3) her memorandum of law. On September 12, 2017, Mr. Stiner filed his supplemental response to Ms. Owens's motion for summary judgment. He did not file a separate response to her Statement of Undisputed Facts, nor did he file any affidavits or exhibits in support of his responses. The County did not file a supplemental response.[2]

By order of November 9, 2017, the trial court denied Ms. Owens's motions and dismissed her complaint in its entirety with prejudice. The trial court found, *inter alia*, that the County was diligent in its attempts to serve Ms. Owens by mail and personal service. Further, the trial court found that the County obtained proper constructive service by publication. Thus, the trial court held that it acquired subject matter jurisdiction to sell Ms. Owens's property in satisfaction of the tax lien. Ms. Owens appeals.

## II. Issue

Ms. Owens raises four issues for review; however, we perceive that there is one dispositive issue, i.e., whether the order affirming the sale of the property is void for lack of adequate service of process of the delinquent tax lawsuit on Ms. Owens.

## III. Standard of Review

Ms. Owens appeals the denial of summary judgment on all her claims. A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. ***Abshure v. Methodist Healthcare-Memphis Hosps***., 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact

---

[2] It was agreed by all parties that the County was a nominal party to the lawsuit.

and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. To the extent that the determination of the issues rests on statutory construction, they present questions of law, which we review *de novo*. *Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 272 (Tenn. Ct. App. 2013) (citing *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000)); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).

## IV. Analysis

## 1. Statutory Requirements

We first address whether the County complied with the statutory requirements for notice under Tennessee Code Annotated sections 67-5-2415, 67-5-2502, and 21-1-203(a). Tennessee Code Annotated section 67-5-2415 governed notice to property owners in suits to enforce tax liens. At the time the County filed the Delinquent Tax Suit,[3] the statute provided, in relevant part:

> (a) The defendant, when served in any manner according to the Rules of Civil Procedure, either by mail or in person, does not have to be served with a copy of the complaint and exhibit and instead, the clerk may issue a notice to accompany the summons.
>
> (b) The notice shall identify the suit mentioned in the summons sufficiently to enable the taxpayer to know what delinquent taxes the taxpayer is being sued for and what property is subject to the lien.
>
> \*\*\*
>
> (d) Constructive service of process shall be made as now provided by law.
>
> (e) In all counties, personal service of process on the defendant may be dispensed with and the summons and notice may be sent by certified or registered mail, return receipt requested . . . .

Tenn. Code Ann. § 67-5-2415 (a), (b), (d), (e). Tennessee Code Annotated section 67-5-2502 also governed notice to taxpayers of suits to enforce tax liens, and, at the time the County filed the Delinquent Tax Suit, provided, in part:[4]

---

[3] This statute was amended four times after the County filed its Delinquent Tax Suit. We address this issue using the May 2012 through May 2013 version of the statute that was in effect at the time the County filed its lawsuit.

[4] This statute was amended six times after the County filed its Delinquent Tax Suit. Therefore, we address this issue using the version of the statute that was in effect at the time the County filed the

(b) It is the responsibility of the property owner to register the property owner's name and address with the assessor of property of the county in which the land lies.

(c) The delinquent tax attorney shall make a reasonable search of the public records in the offices of the assessor of property, trustee, local office where wills are recorded, and register of deeds and give notice to persons identified by the search as having an interest in the property to be sold. The court shall set a reasonable fee for this service.

Tenn. Code Ann. § 67-5-2502 (b), (c).

Under the foregoing statutes, there are three methods for service of process in tax lien suits: personal service, service by mail, or constructive service by publication. Tenn. Code Ann. § 67-5-2415(a), (d), (e). Additionally, the delinquent tax attorney attempting service "shall make a reasonable search of the public records in the offices of the assessor of property, trustee, local office where wills are recorded, and register of deeds and give notice to persons identified by the search as having an interest in the property to be sold." Tenn. Code Ann. § 67-5-2502(c). To ensure proper notice, the property owner is responsible for registering her name and address with the assessor's office in the county in which her property is located. Tenn. Code Ann. § 67-5-2502(b).

The Tennessee Supreme Court explained these statutes in **Wilson v. Blount County**, 207 S.W.3d 741 (Tenn. 2006). In **Wilson**, Blount County filed suit to enforce a tax lien on Dennis Wilson's properties. *Id.* at 744. Mr. Wilson provided the assessor's office a P.O. Box as his mailing address. *Id.* The Blount County Sheriff's Department received two summonses to deliver to Mr. Wilson. *Id.* However, instead of delivering the summonses, Captain Randall Mercks of the Sheriff's Department sent a letter via regular mail to Mr. Wilson's P.O. Box number. *Id.* This letter explained that Blount County initiated legal proceedings against Mr. Wilson related to delinquent property taxes that required Mr. Wilson to be served with a summons. *Id.* The letter described that Mr. Wilson could receive a copy of the summons by visiting the sheriff's office within ten days; otherwise, an "officer [would] be assigned to pursue other means of service." *Id.* The letter was never returned to the sheriff's office, and Mr. Wilson never visited the sheriff's office. Thereafter, Captain Mercks pursued "other means of service" himself. *Id.* Captain Mercks testified that he likely searched the telephone directory for Mr. Wilson in an attempt to locate him. *Id.* However, no further action was taken, and Captain Mercks returned the summons to the clerk's office noting, "DILIGENT SEARCH MADE AND NOT TO BE FOUND IN MY COUNTY." *Id.* at 745. Consequently, the chancery court issued an Order of Publication, entered a Default Judgment against Mr. Wilson, and sold his properties. *Id.* Mr. Wilson did not receive

lawsuit.

notice of the tax lien suit and sale until he found a note attached to his door two years later, notifying him that his property had been sold. Subsequently, Mr. Wilson filed suit to void the default judgment and to set aside the tax sale. *Id.*

The *Wilson* Court found that Blount County did not satisfy the statutory requirements for notice under Tennessee Code Annotated sections 67-5-2415 and 21-1-203, and that Blount County's notice did not comply with due process. The *Wilson* Court explained that, because Blount County never served Mr. Wilson by mail or personal service, the sufficiency of the notice depended on whether Blount County complied with Tennessee Code Annotated section 21-1-203. *Id.* at 746. Tennessee Code Annotated section 21-1-203(a) provides that personal service of process is dispensed with when

> (1) . . . the defendant is a nonresident of this state;
>
> (2) . . . upon inquiry at the defendant's usual place of abode, the defendant cannot be found so as to be served with process, and there is just ground to believe that the defendant is gone beyond the limits of the state;
>
> (3) . . . the sheriff makes return upon any leading process that the defendant is not to be found;
>
> (4) . . . the name of the defendant is unknown and cannot be ascertained upon diligent inquiry;
>
> (5) . . . the residence of the defendant is unknown and cannot be ascertained upon diligent inquiry;
>
> (6) . . . judicial and other attachments will lie, under this code, against the property of the defendant; and
>
> (7) . . . a domestic corporation has ceased to do business and has no known officers, directors, trustees or other legal representatives on whom personal service may be had.

Tenn. Code Ann. § 21-1-203(a). When the sheriff receives a summons, it is the sheriff's duty to "execute and return . . . the process . . . of the courts . . . with due diligence, when delivered to the sheriff for that purpose . . . ." ). Tenn. Code Ann. § 8-8-201(a)(1).[5] Additionally, "no sheriff shall return upon any writ that the person upon whom it is to be

---

[5] This statute was amended twice after the County filed its Delinquent Tax Suit. We address this issue using the August 2011 through June 2013 version of the statute that was in effect at the time the County filed the lawsuit.

served is not to be found in the county, unless such sheriff has **actually been at the place of abode of such person**." Tenn. Code Ann. § 8-8-208 (emphasis added).

In **Wilson**, Blount County argued that constructive service was proper, under Tennessee Code Annotated section 21-1-203(a)(3), because Captain Mercks returned the summonses explaining that Mr. Wilson was not to be found. **Wilson**, 207 S.W.3d at 746; Tenn. Code Ann. § 21-1-203(a)(3). The Court disagreed finding that "the Blount County Sheriff's Department failed to exercise due diligence before making a return that [Mr.] Wilson was not to be found" because Captain Mercks's additional search was merely looking through a telephone directory. **Id.** at 746-47. Due diligence required Blount County to do more. **Id.** at 747. The Court suggested that "Captain Mercks could have checked the tax records for a physical address, or he could have provided service by mail at [Mr.] Wilson's post office address." **Id.** Further, the Court explained that "[w]hen the sheriff makes a false return stating that a person is not to be found, the return will not support constructive service by publication." **Id.** (citing **Willshire v. Frees**, 201 S.W.2d 675, 677 (Tenn. 1947); **Carlisle v. Corran**, 2 S.W. 26, 28 (Tenn. 1886) (holding that jurisdiction cannot be obtained by a false return which is properly challenged)). Therefore, the Court concluded that Blount County failed to comply with the statutory requirements for notice. **Wilson**, 207 S.W.3d at 748.

We reach a similar conclusion here. Turning to the record, it is undisputed that Ms. Owens never received personal service. She also never received service by mail because both mailed summonses were returned to the County. Furthermore, neither summons was mailed to her correct address. The address listed on the deed for Ms. Owens's property is "9410 Dexter Lane." Her deed also states that tax bills shall be sent to the same address. Additionally, the tax bill for 2011 states the "Taxpayer Mailing Address" as "9410 Dexter LN." Furthermore, Ms. Owens testified by affidavit that she never contacted the assessor's office requesting that mail be sent to any address other than "9410 Dexter Lane." Despite this information, the first summons was sent via certified mail to "09410 Dexter LN" and was returned to the County as: "Not Deliverable as Addressed, Unable to Forward." After unsuccessful service of the first summons, the County unilaterally changed Ms. Owens's address to "9412 Dexter LN" and again attempted to serve her at that address via certified mail. The second summons was returned to the County and read: "Return to Sender, No Such Number." In her affidavit, Ms. Owens testified that she never received or rejected any mailings related to the property tax lawsuit. Despite being notified by the post office that "no such number" existed for "9412 Dexter LN," Deputy Bowman attempted to personally serve Ms. Owens with the third summons at "9412 Dexter LN." Deputy Bowman indicated on his return that he did not serve Ms. Owens and that "9412 Dexter LN" was a vacant lot. The County never attempted service at "9410 Dexter Lane," Ms. Owens's actual address.

The County failed to serve Ms. Owens either personally or by mail. Therefore, the sufficiency of the County's notice to Ms. Owens depends on whether the County

complied with the statute governing constructive service by publication. *See **Wilson***, 207 S.W.3d at 746. The County argues that constructive service was proper because it attempted to serve Ms. Owens via certified mail twice and via personal service once. Ms. Owens argues that constructive service was improper because the County never attempted service at her correct address and did not act diligently to find her. The trial court found, in part:

> [Ms. Owens] argues that the [C]ounty did not exercise diligent inquiry as to her residence because her warranty deed states to send Tax Bills to 9410 Dexter Lane. T.C.A. § 21-1-203[(a)](5). This [c]ourt disagrees. Attempting personal service or certified mail service to the 9410 Dexter Lane address was one option for the [C]ounty to give notice but not the only method of notification reasonably calculated to provide notice. The [c]ourt determines the [C]ounty exercised diligent inquiry by mailing the summons by certified mail to 9412 Dexter Lane and by attempting personal service to 9412 Dexter Lane, because it was the address on record in the assessor's office. T.C.A. § 67-5-2415, 67-5-2502(a)(3). Further, in compliance with T.C.A. § 21-1-203(a)(3), the sheriff made return upon leading process that [Ms. Owens] could not be located at the [p]roperty address on record at the assessor's office.

Respectfully, we disagree with the trial court. First, we conclude that the County did not make a reasonable effort to provide Ms. Owens with notice of the proceedings. Tenn. Code Ann. § 67-5-2502(c). The County never attempted service on Ms. Owens at "9410 Dexter Lane," the address listed on her deed and the address listed on her 2011 tax bill. Instead, the County attempted service, via certified mail, at "09410 Dexter Lane." The trial court conceded that "09410 Dexter Lane" is not the same mailing address as "9410 Dexter Lane." When the first summons was returned, instead of attempting service at "9410 Dexter Lane," the County unilaterally changed Ms. Owens's address in its system to "9412 Dexter Lane" and attempted service via certified mail at that address. When the second summons was returned to the County, despite having information that "no such number" existed for "9412 Dexter LN," Deputy Bowman attempted personal service at "9412 Dexter Lane." Upon discovering that "9412 Dexter Lane" was a vacant lot, the County ended its search and sought to serve Ms. Owens via publication. None of the methods employed by the County were reasonably calculated to provide Ms. Owens notice because the County never attempted service at her correct address.[6]

---

[6] Interestingly, the County changed Ms. Owens's address in its system back to "9410 Dexter Lane" after selling her property to Mr. Stiner. In its answer to Ms. Owens's interrogatories, the County states that "9410 Dexter Lane" is the "address of the [p]roperty as currently maintained in the County's records." Furthermore, the Hamilton County Unofficial Property Card, filed as an exhibit to Ms. Owens's Statement of Undisputed Facts, states that Mr. Stiner owns the property located at "9410 Dexter Lane," and that Ms. Owens was the grantor/seller of that property.

We also conclude that the trial court erred in finding that the County complied with Tennessee Code Annotated section 21-1-203(a). The trial court found that "the sheriff made return upon leading process that [Ms. Owens] could not be located at the [p]roperty address on record at the assessor's office." As discussed, *supra*, Deputy Bowman attempted to personally serve Ms. Owens at a vacant lot and made no further attempts to contact her after discovering the lot was vacant. In this regard, Deputy Bowman did not satisfy the due diligence requirement of Tennessee Code Annotated section 8-8-201(a)(1). Furthermore, having never visited Ms. Owens's "place of abode," Deputy Bowman executed a false return when he returned the summons stating that Ms. Owens could not be located. Tenn. Code Ann. § 8-8-208. "When the sheriff makes a false return stating that a person is not to be found, the return will not support constructive service by publication." **Wilson**, 207 S.W.3d at 747 (citing **Willshire**, 201 S.W.2d at 677; **Carlisle**, 2 S.W. at 28 (holding that jurisdiction cannot be obtained by a false return which is properly challenged)).

The trial court also concluded that the County was diligent in its attempts at service because "9412 Dexter Lane" was the address on record in the assessor's office. We disagree. "9412 Dexter Lane" was the address on file with the assessor's office because the assessor's office unilaterally changed Ms. Owens's address in its system. Ms. Owens never changed her address with the assessor's office. Mailing and attempting personal service at a vacant lot, which is not the address the defendant provided to the assessor's office, is not a method of notification that is reasonably calculated to provide notice. The County and Deputy Bowman's searches were neither reasonable nor diligent; therefore, the constructive service by publication was ineffective to bring Ms. Owens before the trial court. For these reasons, we conclude that the County failed to comply with the statutory requirements for notice in a tax lien suit under Tennessee Code Annotated sections 67-5-2415, 67-5-2502 and 21-1-203(a).

### 2. Due Process Requirements

Ms. Owens also brought suit under the Due Process Clause of the United States Constitution and the Tennessee Constitution. Therefore, we must determine whether her procedural due process rights were violated. In **Wilson**, the Tennessee Supreme Court explained that

> [t]he Due Process Clause of the Fourteenth Amendment of the United States Constitution requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing." **Mullane v. Cent. Hanover Bank & Trust Co.**, 339 U.S. 306, 313 (1950); *see also* **Martin v. Sizemore**, 78 S.W.3d 249, 262 (Tenn. Ct. App. 2001) ("The Due Process Clause . . . and Tenn. Const. art. I, § 8 provide similar procedural protections and guarantees."). The notice required by the Due Process

Clause is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. To effectuate the required notice, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315. Significantly, "[w]here the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318.

*Wilson*, 207 S.W.3d at 748. Furthermore, in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), the United States Supreme Court explained that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable." *Id.* at 800.

The United States Supreme Court more recently addressed proper notice and due process requirements in ***Jones v. Flowers***, 547 U.S. 220 (2006). In ***Jones***, the plaintiff, Gary Jones, owned a house on North Bryan Street in Little Rock, Arkansas, where he lived with his wife until their divorce. *Id.* at 223. After their divorce, Mr. Jones moved into an apartment, but his ex-wife remained in the house. *Id.* Mr. Jones continued making mortgage payments. *Id.* After Mr. Jones paid off the mortgage, the property taxes went unpaid. *Id.* The Commissioner of State Lands ("Commissioner") mailed a certified letter to Mr. Jones at the North Bryan Street address notifying him of his tax delinquency, and his right to redeem the property. *Id.* Mr. Jones did not receive this letter. The post office returned the unopened letter to the Commissioner, and it was marked "unclaimed." *Id.* at 224. Two years later, and a few weeks before the public sale of Mr. Jones's house, the Commissioner published a notice of public sale in the newspaper. *Id.* No bids were submitted, and the Commissioner negotiated a private sale of Mr. Jones's property with Linda Flowers. *Id.* Again, the Commissioner sent a letter to Mr. Jones, via certified mail, notifying him that his house would be sold if he did not pay his taxes. *Id.* This letter also went "unclaimed." *Id.* Flowers purchased the house and delivered an unlawful detainer notice to the property, which was served on Mr. Jones's daughter, who then notified Jones of the tax sale. *Id.*

Mr. Jones sued the Commissioner and Flowers for failure to provide notice of the tax sale and his right to redeem, which resulted in the taking of his property without due process. *Id.* Similar to our case, the Commissioner argued that the two unclaimed letters were constitutionally adequate attempts at notice. *Id.* In ***Jones***, the issue before the Supreme Court was "whether the Due Process Clause requires the government to take additional reasonable steps to notify a property owner when notice of a tax sale is returned undelivered." *Id.* at 225. The Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to

- 10 -

provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* The Court explained that "a person who actually desired to inform a real property owner of an impending tax sale of a house he owns would [take additional steps] when a certified letter sent to the owner is returned unclaimed." *Id.* at 229; *see also Mullane*, 339 U.S. at 315. The Court explained that even though the Commissioner may have made reasonable calculations to apprise Mr. Jones of the action and afford him the opportunity to present his objections, it had no good reason to suspect that Mr. Jones had received the notice. *Jones*, 547 U.S. at 230 (internal citation omitted); *see also Mullane*, 339 U.S. at 314.

The Supreme Court concluded that the Commissioner should have taken additional reasonable steps to notify Mr. Jones of the proceedings once it became aware that the notice went undelivered. *Jones*, 547 U.S. at 234. The Court listed additional reasonable steps the Commissioner should have taken to give Mr. Jones notice, among them: (1) sending a letter via regular mail; and (2) posting notice on the front door of the property. The Court reasoned that regular mail stood a better chance of reaching Mr. Jones than certified mail because it did not require a signature. *Id.* at 234. Furthermore, regular mail could be left at the property, unlike certified mail, which, if not received at the property, must be retrieved from the post office. *Id.* at 234-35. Additionally, the Court suggested posting a notice on the front door of the property as it "would increase the likelihood that the owner would be notified that he was about to lose his property." *Id.* at 235. While these additional steps might place an added burden on the governmental agency, the Supreme Court concluded that "the State is exerting extraordinary power against a property owner-taking and selling a house he owns. It is not too much to insist that the State do a bit more to attempt to let him know about it when the notice letter addressed to him is returned unclaimed." *Id.* at 239.

Similarly, in *Wilson*, the Tennessee Supreme Court concluded that Blount County's mailing of a letter was "defective in providing notice because it was not reasonably calculated to apprise Wilson of the tax lien suit and to give him an opportunity to present his objections." *Wilson*, 207 S.W.3d at 749 (citing *Mullane*, 339 U.S. at 315). The Court added that Blount County's constructive service was also inadequate because "[a]lthough Blount County had Wilson's post office address, it never attempted to send either [s]ummons [or] [n]otice through the mail." *Wilson*, 207 S.W.3d at 749.

*Jones*, *Mennonite* and *Wilson* support our holding that the County's attempts to notify Ms. Owens of the Delinquent Tax Suit were constitutionally inadequate. We acknowledge that the County attempted to serve Ms. Owens via certified mail twice; however, neither attempt was mailed to Ms. Owens's actual address. Furthermore, both summonses were returned to the County, which put the County on notice that Ms. Owens did not receive them. Additionally, Deputy Bowman's attempt at personal service failed because he did not visit Ms. Owens's actual address. Instead, he visited a vacant lot.

Thus, the two mailing attempts and the one attempt at personal service were defective in providing notice because none were reasonably calculated to apprise Ms. Owens of the tax lien suit and to give her an opportunity to present her objections. *See Wilson*, 207 S.W.3d at 749 (citing *Mullane*, 339 U.S. at 315). Both the *Jones* Court and the *Wilson* Court explained that when the government is aware that notice to a defendant in a tax lien suit has gone undelivered, the government is required to take additional reasonable steps to serve process. *Jones*, 547 U.S. at 225; *Wilson*, 207 S.W.3d at 749. Here, the County was notified that both attempts at certified mail went undelivered. Furthermore, the County was on notice that "9412 Dexter Lane" was a vacant lot; yet the County did not take the necessary additional steps to serve Ms. Owens beyond constructive notice. The County did not put forth effort "such as one desirous of actually informing the absentee" of the lawsuit. *Mullane*, 339 U.S. at 315. As discussed, *supra*, Deputy Bowman and the County could have and should have taken further steps to locate Ms. Owens once they discovered that the address on file was a vacant lot. The County could have sent a letter via both certified and regular mail to Ms. Owens's correct address, "9410 Dexter Lane." While he was at the vacant lot, Deputy Bowman could have easily gone to neighboring properties to inquire about Ms. Owens's address. He could have visited "9410 Dexter Lane" to see if that was Ms. Owens's correct address and could have posted a notice on the front door of the property. While the County may argue that these additional steps are a burden, "[a]gainst this interest of the [County] we must balance the individual interest sought to be protected by the Fourteenth Amendment." *Mullane*, 339 U.S. at 314. Therefore, we conclude that the County's attempts to serve Ms. Owens did not satisfy the notice requirement of the Due Process Clause. Service by publication also failed to satisfy the minimum due process requirements because the County did not provide "notice by mail or other means to ensure actual notice" when the County had both the name and post office address for Ms. Owens. *Wilson*, 207 S.W.3d at 749 (internal citations omitted).[7]

We are aware that Ms. Owens need not receive actual notice for due process to be satisfied. *Id.* However, our "proper inquiry is whether the [C]ounty took such actions to notify [Ms. Owens] as [were] 'reasonably calculated to apprise [her]' of the proceeding." *Id.* at 750 (citing *Mullane*, 339 U.S. at 314). Here, the County had access to Ms. Owens's correct mailing address because it was listed on the deed to her property. To comply with the due process requirements, the County should have, at the very least, mailed a summons to her correct address. Additionally, Deputy Bowman and the County should have taken additional reasonable steps to find Ms. Owens and to notify her of the proceeding once they discovered that "9412 Dexter Lane" was a vacant lot.

---

[7] We note that the *Jones* Court observed that "'chance alone' brings a person's attention to 'an advertisement in small type inserted in the back pages of a newspaper . . . and that notice by publication is adequate only where 'it is not reasonably possible or practicable to give more adequate warning.'" *Jones*, 547 U.S. at 237 (citing *Mullane*, 339 U.S. at 315, 317).

In **Wilson**, the Tennessee Supreme Court explained that "[w]hen notice is due, 'process which is a mere gesture is not due process.'" **Id.** (quoting **Mullane**, 339 U.S. at 315. The notice given in this case did not comply with Tennessee Code Annotated sections 67-5-2415, 67-5-2502, or 21-1-203 because the County did not exercise due diligence in attempting to reach Ms. Owens. Additionally, the notice did not comply with due process because it was not reasonably calculated to apprise Ms. Owens of the tax lien suit. For these reasons, we conclude that the County's notice to Ms. Owens was inadequate.

In **Rast v. Terry**, 532 S.W.2d 552 (Tenn. 1976), the Tennessee Supreme Court explained that

> [i]t is fundamental that suits to collect delinquent taxes are proceedings in rem; however, it is basic to their validity and vitality that the taxpayer be before the court by actual or constructive service of process. **Naylor v. Billington**, 378 S.W.2d 737, 740-41 (Tenn. 1964). These suits have as their objective the enforcement of tax liens, but not by confiscation. Where the taxpayer is not properly before the court the resulting decree and sale is a nullity as to him and may be assailed at any time. **Tennessee Marble & Brick Co. v. Young**, 163 S.W.2d 71 (Tenn. 1942). *See also*, **Naylor**, *supra*.

**Rast**, 532 S.W.2d at 555. Because the notice to Ms. Owens was inadequate the County never obtained service of process on her. Therefore, Ms. Owens was not properly before the trial court, and the order selling her property to Mr. Stiner and the resulting deed are both null and void *ab initio*. All other issues are pretermitted.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order. The case is remanded with instructions to the trial court to set aside the sale of Ms. Owens's property and declare her the fee simple owner, and for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellee, Kenneth Stiner, Sr., for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE